Please be seated. We're happy to hear argument in our third case, number 144959 United States v. Billups. May it please the court, my name is Robert McClellan. I'm an attorney from Greensboro, North Carolina with a firm of Ivy McClellan and Gatton & Sigman. And I reserve five minutes for rebuttal. I don't want to be so redundant. Obviously we're covering the very same issues. That's right. Do you have anything to add to that? Well, I'll try to be very brief. Circumstances, of course, I will be to the facts of the case first. This individual was charged as being a habitual or having an armed career offender status. He was found to have a gun after a stop of a car. He was found to be a passenger. Of course, after that, the case was heard and there was a plea. There were some issues about Simmons, but those were set aside. And the issue that was brought before the court, we brought an Anders brief first, but the court asked for additional briefing on the issue related to the Johnson case that came down in June. Certainly the circumstances here are ones that have been in flux. Our initial brief did not mention, for instance, Torres Miguel. And we think that that's very important to the case in terms of looking at the analysis, so we would like to adopt both the arguments but also the citations offered to the court in Torres Miguel in the previous argument. One thing about this in terms of looking at that is the most innocent conduct. And I think the court's already had to deal with the problem of what would be the parameters of common law robbery. And just talking to a few practical matters that occur in North Carolina every day that have to be dealt with by trial lawyers, by judges, is that in North Carolina there aren't variations or degrees of common law robbery. It's sort of a catch-all. Everything from the most serious arm-wrestling on the ground and serious beating to a situation that probably occurs every day, maybe occurring now, in most high schools. Some kid walks up to another and says, give me your cell phone. Well, that happens very often. In North Carolina, that's a common law robbery. If somebody says under some sort of duress, I want your cell phone right now, well, that fits within the parameters of common law robbery. It's not a larceny from the person. Again, a larceny from the person is usually non-confrontational where it's a snatching or whether it's a circumstance where it's a pickpocket, as we've already discussed. So we've got a situation where in almost any high school somebody walks up and says, give me your cell phone. Now, that fear that rises from that can be, well, he's going to take it from me again, or I'm not going to be able to find it when he put it in the wrong location, or they're going to tear it up, or somebody might say, give me your cell phone, not saying I need to call 911 because right around the corner we have an injury. To the person that that goes to, that fear is all the same to them. What is going to be the result of that? And it can be as little as he's going to throw it in the toilet again to, yes, he's going to beat me up if I don't do that. It's almost in the vernacular of lunch money. But at the same time, it happens every day. So the court was well-appointed in thinking of the fact that we're not only dealing with  but we're dealing with everyday factors that occur in virtually any courtroom, whether they be superior court or whether they be a decision made whether this is a common law robbery or not. So what we're asking, again, is from a federal definition, does it have that in the analysis, again, from Torres-Miguel, the most innocent conduct is what we have to look at the parameters of, not the most egregious, not the ones in which we solve from the Supreme Court because tomorrow this decision will have to be made in another courtroom dealing with perhaps those circumstances. And many of these people, for instance, my client is relatively young. Almost all these cases that he has were ones of common law robbery. There were like seven or eight of them. And so there are usually youthful crimes, usually ones in which there is only a slight intimidation or one in which there is virtually a snatching because, again, it can be a pocketbook snatching in which the other person tugged at it and because there is a confrontation and there is some show of force, that's going to still be considered by most prosecutors and by the courts to be that of a common law robbery. So you deal with that circumstance. We're also looking at the definition here because this is somewhat different. We're punishing somebody at the federal level. And part of this says, is there an issue of fear? Did the victim feel fear? That's what the element indicates there. It's not a matter of that the perpetrator was in fear. It's that the victim was in fear. So now we have a circumstance in which we're making a different analysis from what somebody did directly to somebody's fear of what they were going to do directly. So that's been implied in the sense that we're going to elevate these sentences so drastically from being what would otherwise be a sentence without the armed career offender status, and we're automatically giving them 15 years. We know that's happening. So on the basis of these many youthful crimes, we're now elevating the statute from being one in which there was a modicum of sentencing to one in which the judge has no choice. He has no ability to make a change in that. That's a mandatory sentence that he's stuck with based on that common law robbery. Now, there's been some discussion about whether this is divisible or whether we can look behind under it. I don't think you have to talk about that. I think we're going to wait for the Supreme Court case. Okay, that's fine. If we reach divisibility. But the issue still from a trial attorney standpoint is can you go behind the underlying convictions to find this out? No. You have a judgment. Most of the charging documents just charge them with classical, with violence or with fear. So there's almost no way from a Shepard or a Taylor standpoint to go back and look at the underlying charge and figure out exactly how that occurred. So in that regard, we're concerned about this application in terms of what would be the most innocent conduct, how is it going to be treated in the courts by that. And again, the fact that common law robbery in North Carolina is a catch-all offense, not having demarcated choices of what can be, whether level one, level two. Excuse me. If you prevail here, you'd have to demonstrate that this error was plain, right? Yes, ma'am. Well, we're having a lot of talk here this morning. There seems to be something to be said on both sides. Yes, ma'am. Certainly, too, the plain error in this particular case has to go back to the underlying facts and circumstances. I was not the trial attorney. Nevertheless, the court needs to make that decision because at the time this has occurred, obviously, we had the residual cause still there. So the court would need to return back to that issue to determine whether there was this, under what cause was this determined and should it be re-sentenced because obviously we have a change in the constitutional factor of this and what we have simply been in the residual cause before is not even apparent to the court at this point. And again, because of this, we have obviously several Johnson cases. We have the earlier Curtis Johnson case and the later Samuel Johnson case in 2012. Again, back to the Torres-Miguel analysis, we think it's correct. We think that in terms of that determination, that's been after Carmichael. We did cite Carmichael in our brief in terms of the fact that before this, the panel to this court determined that it would fall under the residual cause. That's no longer apparent or present. So analysis needs to occur again. But I think based on the arguments that have been previously made, again, not wanting to be redundant, does the court have any further questions for me? I don't think so. Thank you. Thank you very much. Rand? Giving up? Good morning and may it please the court. Ripley Rand for the government. I feel a little bit like the fourth salesperson at the dealership that comes up and says, you know, let me really tell you about this car. But rather than just give a traditional, straightforward argument, I'll try to focus on two of the things that you've heard a little bit about already from the other folks. The first is in talking about the Chance case and the Eldridge case and the Hammonds case, I think these cases from the Court of Appeals in North Carolina show sort of the real world aspect of how these things play out in court. There are not active force common law robberies and constructive force common law robberies, but they are just the facts of the case. In these cases, in the Chance case in particular, the facts are not just that the defendant in that case pushed the victim's hand out of the way and took the cigarettes and ran off, but the victim testified as to actual fear, testified that she was scared. Because of the fact that when the defendant came in and asked for the cigarettes, she turned around to get them out of the counter. And when she turned back around, he had moved up on her. And she said that she was scared by that. And then when he grabbed her hand and grabbed the cigarettes and took off. Did you read the transcript of the case? Is that what you're quoting from? No, that's in the opinion. It goes through the active force. Then it says there was not a threat, but that the defendant moved up on the victim when she had turned around and that she did testify as to actually being scared at the trial. That's in the later part of that paragraph in the Chance case. The Court of Appeals clearly looked at the totality of the circumstances, looked at all the facts in that case. The Eldridge case, similarly, this was not just a push as to get the victim out of the way, and that's all it was. The circumstances back in that storeroom, whatever they were, were sufficient for the victim to fall down after being pushed. The Court of Appeals clearly looks at the totality of the circumstances involved in looking at these situations and doesn't just decide, is this active force, is this constructive force, as if they are two separate cases, but looks at the totality of the circumstances in figuring out whether this particular case before the court is a common law robbery or is a larceny from the person. This is not a situation where North Carolina has a common law robbery and then doesn't have any other kind of analogous offense that doesn't involve force. There is a separate and distinct felony in larceny from the person. I didn't mean to interrupt you. I was waiting for the end of that sentence. Okay. Yes. Period. Okay. Thank you. And I don't mean to interrupt your train of thought, but I just don't see what you're saying about the victim saying she was in fear. I believe that there is a reference in that final paragraph where they're talking about that that the victim testified to being scared. If I'm incorrect, that's my fault. Where the defendant tried to reach into the cabinet and grab the box? I don't remember the exact terminologies except for the word scared being in there that she testified to being scared and that the defendant had moved up on the victim when she turned around. Okay. Well, I'll keep looking for it. Thank you. Okay. But those cases, the Henry case, the Hammonds case, the Eldridge case, the Chance case, those show the totality of the circumstances that the courts look at when they're looking at these situations. Mr. Counselor, can you tell me, do you think in the North Carolina's interpretation of the Supreme Court of common law robbery that it would be met in this circumstance? You walk up to the counter and you say, look straight in the eyes of the cashier, give me your money, and they give it to you. Would that be robbery? I think in just a cold, dry transcript sense, it's not clear. It's not enough. The facts are clear. Just tell me the facts. He looks her right in the eye and he says, give me your money. That was an intimidating look that you gave me, and so I would. That's exactly what I'm sure he or she would do to the cashier, right? My question to you, would that accomplish common law robbery in North Carolina? I think in the totality of the circumstances, yes, it would. The totality is that I'm in your store. I'm not showing you a weapon. I approach you. I look at you, as you say, in a very intimidating way. Fair enough. And I say, give me the money. That would be enough, wouldn't it? That would be enough under the fear slash intimidation prong of common law robbery. So you really don't have to do anything other than show up and ask? Well, I would say some folks probably would have a harder pull with that than other folks. I know, but we're trying to keep this away from physiologists. I've got to be 6'6", and then if you're 5'3", it's not robbery. Then that's what we're talking about? Well, I think that plays into the fear and intimidation part of the common law robbery. If the circumstances. As counsel said, we're jacking these sentences way up and giving people an incredible amount of time over things that are so slighted out by statute and common law. And you're right. North Carolina had no interest in being specific about it because they wanted to have the whole range. But Congress decided that we want to punish people who were involved in violent crimes in the past to get more time. So what you're doing is a disconnect. You're taking cases that the state had an interest in being as broad as possible. Students, like you said, you're absolutely right. Any given school, unfortunately, they're giving you lunch money. Well, I'll beat you up. It is robbery, right? But then there are other situations. But didn't Johnson kind of say, we don't want this residual clause. You don't know what we're talking about. We're talking about clear, violent force, not just I look at you like you admitted and you said, that's enough probably. It probably would be because a judge would do exactly what you said. I don't know, he was about 6 foot 6 and she was 5 foot 1. I would have been scared too. That's robbery. Because I think you could do it under common law probably in North Carolina. Well, North Carolina has adopted the Blackstone definition of robbery as these other states that are cited in the government's brief. In Virginia, Maryland, Arizona, Michigan, Georgia, Indiana, Tennessee, all these states have decided that common law or Blackstone robberies qualifies violent felonies or crimes of violence, depending on the case, based on either the active force or the constructive force or both. The part of the Blackstone robbery is the fear or intimidation inherent in the circumstances, the totality of the circumstances in the case. So just a dry transcript, give me your money, that could be viewed as a request, you know, somebody at a bus station who's paying the fare, give me your money, give me your fare. I mean, in a transcript sense, it's not clear based on the circumstances, but when these things play out in a courtroom in trial, that's how the circumstances inherent in the interaction between the defendant and the victim are made clear. And again, we're not just talking about an active force, a physically violent act. The Blackstone robberies also deal with threats, constructive force, fear, intimidation, and all of these cases that we've been talking about this morning, all of those have that component somewhere in them, in the totality of the circumstances. Now, Mr. Moran, you were absolutely right. The witness did say she was scared. It was on another page I wasn't looking at. I'm very relieved to hear that. But what about the fact that the court wasn't relying on any element of fear and upholding this? The court said the amount of force was sufficient. The court said it was the actual force, the amount of actual force used, was sufficient to induce Ms. Wheaton to part with the cigarettes. And actually, she sounded like she was a pretty interesting person. She yelled after him when he was going off with the cigarettes. But the court was focusing on the actual force used rather than fear. So how does that play into your analysis? I think that the Court of Appeals in that case, that Chief Judge Martin did sort of a He was talking about the active force, but also included the fact that the victim said that she was scared and that the defendant had moved up on the victim as she stood there behind the counter. The court doesn't use fear in its reasoning. It uses actual force. But, you know, as I said, maybe it's threading the needle too finely. I don't know. I'm not an embroiderer, I'm afraid. I would contend that the totality of the circumstances are what is important in looking at these cases and how they play out in the courtroom in the context of common law robbery. And again, with respect to the blackstone nature of these offenses, all these other states basically are working off the same playbook that North Carolina is with respect to the active force and the constructive force. I guess if I could just interject again, what's really bothering me here is that we've got a pretty close case, it seems to me. And it's your proof. So I know it's not beyond a reasonable doubt, but do you think you've shown higher preponderance of the evidence here? I think in looking at the universe of these cases that we have coming out of North Carolina versus the universe of cases that you see in these other places, the cases that Mr. Dowling cited in the Gardner case and the other things, we don't have a complete outlier like somebody accidentally running over somebody as they drive away from the scene or sneaking up behind them and popping the purse off and that that constitutes common law robbery. We don't have an outlier like that that would demonstrate that the kind of blackstone robbery that has been in the case law ever since the 1700s coming out of England, that that's not what we're talking about, that it's evolved over time to be something different. I don't think that the universe of cases in North Carolina demonstrate that. We don't have something that's so far removed from your old school robbery, somebody walking down the road and getting robbed. We don't have anything like that. I thought Torres Miguel told us, which may or may not be good law, but let's just assume for the purpose of my question it is, that what we look at is what could be regarded as common law robbery under North Carolina law. We don't even have to actually have a case. We just have to envision a case that we look at all these cases and say, well, this could be robbery. Well, I agree with that. I think under the Duane S. Alvarez case and the other cases that interpret that, it has to be a realistic probability as opposed to just sitting around and trying to come up with, well, is there some. Right, right, you'd be sure. And I don't think that what we have in North Carolina gives any indication that our courts are willing to go that far with sneaking the purse off as the woman walks up the stairs or running over somebody as they're trying to get away with the car by accident or by negligence. I don't think North Carolina has a case like that. And I don't think that there's, based on the cases we do have, that it's an easy extrapolation to do that, to come up with a case like that, that North Carolina would approve of. Okay. Thank you very much. I'll be glad to answer any questions you have, but we would ask that the court affirm the judgment of the district court. Do you have any rebuttals? I'll leave the court. I have very little, Your Honor. Again, the Torres-Miguel case, I think we've all come to some conclusion about that. And the only quotation I will use from that is, the most innocent conduct is what is engaged in that case. And certainly if we're all using that as our template, what we're looking at, we're having to imagine what the most innocent conduct might be. And because we're having to deal with that, as we walk out of this courtroom, we walk to another where we have to make determinations of what that most innocent conduct might be and how it will affect people in federal court. So we're using a federal court definition, not necessarily that of a state court definition of what would be a violent act or what would be a common law robbery under certain circumstances. Other than that, thank you for the court. Are there any further questions for me? No, I think we're fine. Thank you. And thank you for understanding that you are also court appointed, and we thank you very much for your service. We will come down and greet the lawyers and then go to our last meeting. Thank you.
judges: Diana Gribbon Motz, Roger L. Gregory, Barbara Milano Keenan